UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES DEPARTMENT OF LABOR,

                Appellant,

     -against-

KENNETH KIRSCHENBAUM, Chapter 7 Trustee
of the Estate of the Robert Plan Corporation, *et al.*,

                Appellees.

-----------------------------------------------------------------X

**OPINION AND ORDER**
13-CV-2682 (SJF)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   MAR 3 1 2014   ★

**LONG ISLAND OFFICE**

FEUERSTEIN, J.

      Pursuant to this Court's April 9, 2013 order granting leave to appeal to the Secretary of

the United States Department of Labor (the "Secretary"), the Secretary appeals from the

interlocutory portions of an order of the Honorable Robert E. Grossman, United States

Bankruptcy Judge, dated August 20, 2012 (the "Compensation Order"), which authorized the

payment of fees to the Chapter 7 trustee and his retained professionals from the assets of an

employee benefit plan. For the reasons that follow, the decision of the Bankruptcy Court is

reversed.

I.     Background

      A. The Bankruptcy

      On August 25, 2008, The Robert Plan Corporation ("RPC") and The Robert Plan of New

York (collectively, the "Debtors") each filed a petition for relief under Chapter 11 of Title 11 of

the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court, Eastern

District of New York (the "Bankruptcy Court"). Compensation Order, at 3. On January 19,

2010, the Bankruptcy Court converted the Chapter 11 cases to cases under Chapter 7 of the

Bankruptcy Code,[1] and appointed Kenneth Kirschenbaum as Chapter 7 trustee ("Kirschenbaum"

or "Chapter 7 Trustee"). *Id.* at 3-4.

Upon his appointment, Kirschenbaum, as the Chapter 7 Trustee, assumed responsibility

for administering the RPC Plan, as required by section 704(a)(11) of the Bankruptcy Code

("Section 704(a)(11)"). *See* 11 U.S.C. § 704 ("(a) The trustee shall . . . (11) if, at the time of the

commencement of the case, the debtor . . . served as the administrator (as defined in . . . the

Employment Retirement Income Security Act of 1974 ("ERISA")) of an employee benefit plan,

continue to perform the obligations required of the administrator.").[2]

B.  The Robert Plan Corporation Retirement Savings Plan

RPC sponsored an employee benefit plan, entitled The Robert Plan Corporation

Retirement Savings Plan (the "RPC Plan"), for the benefit of its employees.  Compensation

Order, at 4.  The RPC Plan is governed by the terms of an adoption agreement, a basic plan

document, and a trust agreement (collectively, the "RPC Plan Documents") [Docket Entry Nos.

1-14, 1-15, 1-16, 1-17][3], as well as ERISA, 29 U.S.C. § 1001, *et. seq.*

Pursuant to the RPC Plan Documents, RPC is the administrator of the RPC Plan

("Administrator" or "RPC Plan Administrator").[4]  The RPC Plan Documents identify the

---

[1]     The Debtors' cases were substantively consolidated on September 8, 2010.  [Docket Entry No. 1-39].

[2]     Section 704(a)(11) was added to the Bankruptcy Code pursuant to the Bankruptcy Abuse and Prevention Consumer Protection Act of 2005, creating an additional obligation for Chapter 7 trustees in order to "streamline[] the appointment of an ERISA administrator for an employee benefit plan, under certain circumstances, to minimize the disruption that results when an employer files for bankruptcy relief." H.R. Rep. 109-31(I) (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 105.

[3]     The RPC Plan Documents are cited throughout this opinion as "RPC Plan."

[4]     Section 2.01(c) of the Basic Plan Document defines "Administrator" as "the Employer adopting this Plan, as listed in Subsection 1.02(a) of the Adoption Agreement," which lists "The Robert Plan Corporation" as the employer.  RPC Plan §§ 1.02(a), 2.01(c).

Administrator as a "named fiduciary" "for purposes of ERISA Section 402(a)(1)," RPC Plan § 19.04, which provides that the fiduciary "shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). ERISA requires a fiduciary to exercise a "prudent man standard of care," and to "discharge his duties" "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries," and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1).

The RPC Plan Documents grant the Administrator "the full power and the full responsibility to administer the Plan in all of its details, subject, however, to the requirements of ERISA." RPC Plan § 19.01. The RPC Plan Documents further provide that "[i]n addition to the powers and authorities expressly conferred upon it in the Plan, the Administrator shall have all such powers and authorities as may be necessary to carry out the provisions of the Plan, including the discretionary power and authority to interpret and construe the provisions of the Plan." *Id.* The Administrator is expressly permitted to "terminate the Plan at any time . . . by written notice delivered to the [Plan] Trustee."[5] RPC Plan § 16.06. The RPC Plan Documents further provide that "[t]he Administrator may, by written instrument, allocate and delegate its fiduciary responsibilities in accordance with ERISA Section 405," *id.*, which permits "named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities . . . under the plan." 29 U.S.C. § 1105(c)(1).

Under ERISA, a fiduciary is entitled to "receiv[e] any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan." 29 U.S.C. § 1108(c)(2). The RPC Plan Documents expressly authorize the Administrator to pay "all reasonable expenses (including legal,

---

[5] Pursuant to the RPC Plan Documents, Fidelity Management Trust Company is the trustee of the RPC Plan. RPC Plan § 2.01(zz).

3

accounting, and employee communication fees) incurred by the Administrator and the [Plan] Trustee in administering the Plan and Trust . . . from the forfeitures (if any) resulting under Section 11.08, or from the remaining Trust Fund." RPC Plan § 19.05.

C. Applications to the Bankruptcy Court

On May 6, 2010, June 10, 2010, and August 6, 2010 (the "2010 Applications"), Kirschenbaum sought authorization from the Bankruptcy Court to: (1) terminate the RPC Plan; (2) retain Kirschenbaum & Kirschenbaum, P.C. ("K&K"), as attorneys for Kirschenbaum, Travis L. Whitfield ("Whitfield") as an independent auditor for Kirschenbaum, and David Witz ("Witz") as a pension consultant to Kirschenbaum (collectively, the "professionals"); and (3) pay the professionals from the RPC Plan funds. Compensation Order, at 4-5. In order to pay for the administration of the RPC Plan, including the professionals' fees, Kirschenbaum applied a three percent (3.00%) surcharge to the account of each participant in the RPC Plan and segregated the proceeds of the surcharge in the "Pguy Account." *Id.* at 5. The Secretary objected to the 2010 Applications, arguing that the bankruptcy court lacked jurisdiction over Kirschenbaum in his capacity as administrator of the RPC Plan, and thus, could not authorize either the retention of the professionals or the payment of their fees from the Pguy Account. *Id.* at 4-5.

On October 26, 2010, the Bankruptcy Court overruled the Secretary's objections and held that Kirschenbaum, as Administrator of the RPC Plan pursuant to Section 704(a)(11) of the Bankruptcy Code, is subject to the Bankruptcy Court's core jurisdiction (the "October 2010 Decision"). October 2010 Decision, at 2 ("Because [Kirschenbaum] is fulfilling his duties imposed by the Bankruptcy Code pursuant to 11 U.S.C. § 704(a)(11), [he] is subject to this Court's core jurisdiction while performing these duties."). The Bankruptcy Court further held that it "has jurisdiction over any request by [Kirschenbaum] to retain and pay professionals to

4

assist [him] in carrying out his duties as [RPC] Plan administrator." Compensation Order, at 5 (summarizing October 2010 Decision). The Bankruptcy Court stated that "[w]hether the Trustee seeks to collect payment from the Plan or from the Debtor's estate has no bearing on the Court's core jurisdiction over the Trustee as Administrator, including a request for an award of fees and expenses in connection with his administration of the Plan." October 2010 Decision, at 24. The Bankruptcy Court declined to rule on whether the Chapter 7 Trustee may use RPC Plan funds to pay the fees, but noted it would "depend upon whether the services performed are compensable under the relevant ERISA statutes and the Plan documents." *Id.* at 26. The October 2010 Decision did not authorize the payment of any fees, but stated that "any order [awarding fees] would direct [Kirschenbaum] to first seek to satisfy the award from [ERISA] Plan funds." *Id.* The Secretary did not appeal the October 2010 Decision. Compensation Order, at 6.

On January 5, 2011, Kirschenbaum and the professionals filed applications for interim fee compensation. *Id.* On March 1, 2011, over the Secretary's objection, the Bankruptcy Court granted the applications, but "refrained from specifying whether the awards were to be paid from the [RPC] Plan assets, assets of the Debtors' estate, or some combination of both." *Id.* at 6-7. Pursuant to the March 1, 2011 order, Kirschenbaum paid himself thirty-four thousand dollars ($34,000.00) as interim compensation and seven hundred forty dollars and forty-two cents ($740.42) as reimbursable expenses from the Pguy Account, and eleven thousand three hundred dollars ($11,300.00) in interim compensation using funds from the Debtors' estates. *Id.* at 7. The professionals' fees were paid with funds from the Pguy Account. *Id.*

On November 9, 2011, Kirschenbaum and K&K again filed interim fee applications, and Witz and Whitfield filed final fee applications. *Id.* at 4, 7. On August 20, 2012, the Bankruptcy Court, again over the Secretary's objections, issued the Compensation Order, granting: interim

fee awards of one hundred thirty-two thousand three hundred seventy-eight dollars and twenty-four cents ($132,378.24) to Kirschenbaum, and forty-seven thousand six hundred twenty-eight dollars and seventy-seven cents ($47,628.77) to K&K (subject to a twenty percent (20%) holdback); and final fees awards of forty-four thousand sixty-eight dollars and seventy-five cents ($44,068.75) and three thousand seven hundred fifty-five dollars ($3,755.00) in expenses to Witz, and fifty-three thousand dollars ($53,000.00) in fees and one thousand one hundred eleven dollars and sixty-four cents ($1,111.64) in expenses to Whitfield. Compensation Order, at 33.

The Bankruptcy Court authorized the payment of these awards from the funds in the Pguy Account, noting that the account was not part of the Debtors' estates, and that the one hundred forty-six thousand three hundred eighty-two dollars and one cent ($146,382.01) in the Pguy Account was insufficient to pay the awards in full. *Id.* at 1, 7-8, 33. The Bankruptcy Court authorized the use of funds from the Debtors' estates to satisfy the remainder. *Id.* at 33. The Bankruptcy Court held that "[t]he fact that the Plan assets administered by the Trustee are not property of the Debtors' estate has no bearing on the Court's jurisdiction over the Trustee when acting as the Plan administrator" because the Bankrtupcy Court "has core jurisdiction to award fees to the Trustee and his duly retained professionals in connection with the Trustee's acts as Plan administrator," "[w]hether the payments are made from the Plan assets or Bankruptcy estate assets." *Id.* at 2-3.

On September 4, 2012, the Secretary filed an application pursuant to 28 U.S.C. § 158(a)(3) and Rules 8001 and 8003 of the Federal Rules of Bankruptcy Procedure, seeking leave to file an appeal from the interlocutory portions of the Compensation Order ("Motion for Leave to Appeal"). [Docket Entry No. 1-118]. On April 9, 2013, this Court granted the Secretary's application for leave to appeal only insofar as it sought a determination of "whether the

6

bankruptcy court has jurisdiction to order the fee awards be paid from an ERISA plan." April 9, 2013 Order [Docket Enty No. 5], at 7. On April 30, 2013, the Secretary filed an appellate brief seeking reversal of the Compensation Order. [Docket Entry No. 6]. On May 15, 2013, Kirschenbaum filed an appellate brief seeking to affirm the Bankruptcy Court's authorization of the payment of fees from the Pguy Account. [Docket Entry No. 7].

II.    Discussion

     A.  Standard of Review

     This Court has jurisdiction to hear appeals from judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a). On appeal, the district court reviews a bankruptcy court's findings of fact for clear error. Fed. R. Bankr. P. 8013. Issues of law, as well as "mixed questions of law and fact," are reviewed *de novo*. *In re Vebuliunas*, 332 F.3d 85, 90 (2d Cir. 2003). "On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013; *see also In re Moreo*, 437 B.R. 40, 50 (E.D.N.Y. 2010).

     B.  The Secretary's Standing to Appeal the Compensation Order

     Kirschenbaum challenges the Secretary's standing to appeal the Bankruptcy Court's Compensation Order. *See* Opposition to Motion for Leave to Appeal ("Opp. to Mot. for Leave to Appeal"), at 7-9.[6] In order to have standing to appeal a ruling from a bankruptcy court, an appellant must be a "person aggrieved." *In re DBSD North America, Inc.*, 634 F.3d 79, 89 (2d

---

[6]      Kirschenbaum's opposition to the Secretary's Motion for Leave to Appeal is not included in the appellate record filed under case number 13-cv-2682, which was opened upon the filing of the appellate record. However, it is available on the docket of case number 12-mc-608, which was opened upon the Secretary's filing of the Motion for Leave to Appeal and was closed following this Court's order on that motion. [12-mc-608, Docket Entry No. 1-7]. The Secretary responded to Kirschenbaum's standing arguments in its appellate brief. Kirschenbaum's appellate brief contains no further argument on this issue.

Cir. 2011) (quoting *Int'l Trade Admin. v. Rensselear Polytehnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991)). Kirschenbaum argues that the Secretary lacks a "direct pecuniary interest in the Plan assets," and thus, is not an "aggrieved person" with standing to appeal the Bankruptcy Court's Compensation Order. Opp. to Mot. for Leave to Appeal, at 7.[7] However, "[w]hile the 'pecuniary interest' formulation is an often used and often useful test of standing in the bankruptcy context, it is not the only test." *In re Zarnel*, 619 F.3d 156, 162 (2d Cir. 2010) (internal quotation marks and citation omitted). "Instead, even absent a direct pecuniary interest in the litigation, a public interest may also give a sufficient stake in the outcome of a bankruptcy case to confer appellate standing." *Id.* (internal quotation marks and citation omitted); *see also In re DBSD North America*, 634 F.3d at 89 n.3. Congress has explicitly recognized that employee benefit plans "are affected with a national public interest." 29 U.S.C. § 1101(a). In this appeal, the Secretary seeks to "monitor employee benefit plans and deter violations of the law." H. Rep. No. 101-386, at 431-32 (1989), *reprinted in* 1989 U.S.C.C.A.N. 3018, 3035. Therefore, this Court finds that the Secretary represents the public interest and has standing to appeal the Compensation Order.

---

[7]     In his opposition to the Secretary's Motion for Leave to Appeal, Kirschenbaum also argued that "the Department of Labor explicitly chose not to object to, or even address, the issue of whether the Bankruptcy Court has the jurisdiction to authorize the Trustee and his professionals to satisfy any awards of reasonable compensation out of Plan assets." Opp. to Mot. for Leave to Appeal, at 10. As the Secretary correctly notes in his appellate brief, "from the very beginning of the Secretary's participation in this case, the Secretary has made the Bankruptcy Court's lack of jurisdiction over the ERISA Plan assets an issue of fundamental importance." Secretary Br. [Docket Entry No. 6], at 15. However, even if the Secretary had not previously objected to the Bankruptcy Court's jurisdiction, that would not preclude this Court from considering whether the Bankruptcy Court had jurisdiction to issue the Compensation Order. *See In re Trans-Indus., Inc.*, 419 B.R. 21, 28 (Bankr. E.D.Mich. 2009) ("Federal courts are courts of limited jurisdiction and have a continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before them. Parties can neither waive nor consent to subject matter jurisdiction." (quoting *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc.*, 930 F.2d 1132, 1137-38 (6th Cir. 1991))).

C. Bankruptcy Court Jurisdiction

    1. "Core" and "Non-Core" Jurisdiction

The bankruptcy court's jurisdiction is governed by 28 U.S.C. §§ 1334 and 157(a). The district court has "original and exclusive jurisdiction of all cases under title 11," 28 U.S.C. § 1334(a), and has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), the district court may refer to the bankruptcy court "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a). The Eastern District of New York has a standing order that provides for automatic reference. *See* Eastern District Standing Order, dated Dec. 5, 2012.

A bankruptcy court's power to adjudicate matters in a bankruptcy case depends upon whether the proceeding is "core" or "non-core." 28 U.S.C. § 157(b), (c). Core proceedings are those "arising under title 11" or "arising in a case under title 11." 28 U.S.C. § 158(b)(1). A proceeding "aris[es] under" title 11, and therefore invokes the bankruptcy court's core jurisdiction, if it "invoke[s] substantive rights created by bankruptcy law." *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 70 (2d Cir. 2002). A proceeding "arising in" title 11 "covers claims that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 350-51 (2d Cir. 2010) (internal quotation marks and citations omitted). In core proceedings, the bankruptcy court has the power to hear and enter a final order. 28 U.S.C. § 157(b)(1). Core proceedings include "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A).

A bankruptcy court has "non-core" jurisdiction over proceedings that are "related to" the bankruptcy case. 28 U.S.C. § 157(c)(1); *see also In re EMS Fin. Servs., LLC*, 491 B.R. 196, 201

9

(E.D.N.Y. 2013) ("[N]on-core proceedings are those that are related to the bankruptcy case but do not arise under Title 11 . . . ."). A proceeding is "related to" a bankruptcy case where "the outcome might have any 'conceivable effect' on," or "'any significant connection' with the bankruptcy estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). In non-core proceedings, the bankruptcy court may only "submit proposed findings of fact and conclusions of law to the district court" for final determination following a *de novo* review. 28 U.S.C. § 157(c)(1).

   2. Existing Case Law on the Bankruptcy Court's Jurisdiction
      Over Chapter 7 Trustee's Obligations as ERISA Plan Administrator

The case law on bankruptcy court jurisdiction to order fee awards to be paid from non-estate ERISA plan fund assets, is "scant and inharmonious." *In re Franchi Equip. Co.*, 452 B.R. 352, 356 (Bankr. D.Mass. 2011) ("*Franchi*"). In addition to the October 2010 Decision and the Compensation Order, this Court is aware of six (6) cases addressing a bankruptcy court's jurisdiction with respect to a Chapter 7 trustee's ERISA obligations. Two (2) of the six (6) cases held that the bankruptcy court lacked jurisdiction to award compensation from the non-estate assets. *See In re AB & C Grp., Inc.*, 411 B.R. 284 (Bankr. N.D.W.Va. 2009) ("*AB & C Group*"); *In re Mid-States Express, Inc.*, 433 B.R. 688 (Bankr. N.D.Ill. 2010) ("*Mid-States Express*"); the other four (4) cases held that the bankruptcy court had jurisdiction over the Chapter 7 trustee's ERISA obligations. *See In re Trans-Indus., Inc.*, 419 B.R. 21 (Bankr. E.D.Mich. 2009) ("*Trans-Industries*"); *In re NSCO, Inc.*, 427 B.R. 165 (Bankr. D.Mass. 2010) ("*NCSO*"); *Franchi*, 452 B.R. 352 (Bankr. D.Mass. 2011); *In re Negus-Sons, Inc.*, No. BK09-82518, 2013 WL 4674917 (Bankr. D.Neb. Aug. 30, 2013) ("*Negus-Sons*").

In *AB & C Group*, the bankruptcy court held that it lacked both "arising under" and "arising in" jurisdiction to authorize the payment of professional services from ERISA plan

funds, despite its jurisdiction to approve the trustee's request, pursuant to Section 327 of the Bankruptcy Code, to employ professionals because "§ 327 provides no authority for this court" "to declare that the [professional's] compensation is payable from the Plan, a non-estate asset." 411 B.R. at 290-91. The bankruptcy court stated that the "resolution of disputes over the payment of administrative costs from Plan assets under ERISA" "does not depend upon bankruptcy for its existence, nor does it involve an administrative matter that arises only in bankruptcy cases." *Id.* at 292. The bankruptcy court also found that "the Trustee's duty under § 704(a)(11) is too tangential to make the [requested relief] related to the administration of the bankruptcy case." *Id.* at 292. Thus, the bankruptcy court held that it lacked "related to" jurisdiction. *Id.*

In *Mid-States Express*, the bankruptcy court held that "[S]ection 704(a)(11) does not confer 'arising under' jurisdiction" "over the trustee acting as the plan administrator distributing non-estate assets to non-creditors" "because the substantive rights at issue are provided by ERISA and not the Bankruptcy Code." 433 B.R. at 693, 696. The bankruptcy court explained that Section 704(a)(11) only places "the trustee in the shoes of the ERISA administrator," whose "rights and obligations are found in ERISA," and not in the Bankruptcy Code. *Id.* at 696. Similarly, the bankruptcy court held that it had no "arising in" jurisdiction to "adjudicate underlying non-bankruptcy rights governed by ERISA." *Id.* at 698. The bankruptcy court noted that while the trustee is "a creature of the Bankruptcy Code," "[t]he trustee does not carry around 'arising in' jurisdiction with him." *Id.* at 697 (citation omitted). The bankruptcy court explained that "the trustee is not requesting this court to authorize anything that he cannot already do," since the ERISA plan gave the trustee "the choice to have either the Plan or the estate pay the expenses associated with administering the Plan." *Id.* at 699-700. Therefore, the bankruptcy

court held that it lacked "related to" jurisdiction because the "trustee's requested order can have no effect on the amount of estate property or the allocation thereof because it does not change the trustee's abilities." *Id.*

In *Trans-Industries*, the Chapter 7 trustee/administrator brought claims against the pre-petition administrators of the debtor's pension plan for breach of fiduciary duties imposed by ERISA, as well as a breach of contract claim based on state common law. 419 B.R. at 30. The bankruptcy court concluded that it lacked "arising under" jurisdiction because the claims asserted are not created by the Bankruptcy Code. *Id.* The bankruptcy court further concluded that it lacked "arising in" jurisdiction because the "ERISA and contract claims, of course, can exist outside of bankruptcy." *Id.* Pursuant to prior authorizations by the bankruptcy court, the Chapter 7 trustee used funds from the bankruptcy estate to pay for expenses and fees of administering the ERISA plan in accordance with Section 704(a)(11) because the plan was "effectively bankrupt." *Id.* at 32, 35. The bankruptcy court held it had "related to" jurisdiction over the adversary proceeding against the pre-petition administrators because "[t]he ultimate distribution to creditors of the bankruptcy estate, of course, will be directly affected by the extent to which the ERISA Plan reimburses the bankruptcy estate for the fees and expenses the estate has paid to enable the Trustee to administer the Plan." *Id.* at 33.

In *NSCO*, the Chapter 7 trustee moved the bankruptcy court for entry of an order terminating the ERISA plan, finding that he had satisfied his Section 704(a)(11) obligations to administer the ERISA plan, and barring any claims related to his administration of the plan. 427 B.R. at 169-70. The Secretary challenged the jurisdiction of the bankruptcy court "to determine whether the Trustee has fulfilled his fiduciary duties under ERISA and to release him from any

12

liability for breach of his fiduciary duties under ERISA."[8] *Id.* at 172. The bankruptcy court

determined that it had core jurisdiction because "[the trustee's] duties originate in § 704(a) and

only draw in ERISA because of § 704(a)(11)." *Id.* The bankruptcy court explained that "[w]hen

Congress amended the Bankruptcy Code in 2005 [to include Section 704(a)(11)], that it chose to

place the statutory obligation solely in the Bankruptcy Code, rather than in ERISA or in both

statutes, is some indication that Congress intended ERISA responsibilities to fit within the

framework of the Bankruptcy Code, and not the other way around." *Id.* Despite concluding that

it had core jurisdiction, the bankruptcy court held that the requested relief was premature. *Id.* at

182-83.

In *Franchi*, the Chapter 7 trustee sought approval from the bankruptcy court to the pay

the expenses of administering the ERISA plan using ERISA plan assets. 452 B.R. at 354. As

with the instant case, the ERISA plan had insufficient to funds to pay the requested fees in full.

*Id.* at 360. The bankruptcy court found "[t]here can be no doubt that the possibility for a pension

plan's insufficiency of assets created the ever-present potential that a bankruptcy estate will be

called upon to compensate a Chapter 7 trustee and his professionals for their plan administration

services." *Id.* The bankruptcy court concluded that "this potential confers upon the bankruptcy

court *at least* related-to jurisdiction over the fee requests." *Id.* (emphasis added). The

bankruptcy court went on to hold that the oversight and compensation of the Chapter 7 trustee,

and his professionals, for administering the ERISA plan in accordance with Section 704(a)(11)

was within the bankruptcy court's "arising under" core jurisdiction, and not merely its "related

---

[8]     Unlike the instant case, the Secretary did not challenge the bankruptcy court's jurisdiction in
*NSCO* to approve fees incurred in terminating the ERISA plan because they "would be paid by the
bankruptcy estate as the 401(k) Plan has no funds." *Id.* at 170. However, the bankruptcy court noted that
the "[Secretary's] pleading suggests it would have challenged this Court's jurisdiction to approve fees if
they were to be paid from the 401(k) Plan's assets. *Id.* at 171 n.6.

to" jurisdiction. *Id.* The bankruptcy court stated that by enacting Section 704(a)(11), "Congress chose, quite reasonably, to confer [the responsibility to administer employee retirement plans] on bankruptcy trustees who are, body and soul, creatures of the Bankruptcy code." *Id.*

In *Negus-Sons*, the bankruptcy court granted the Chapter 7 trustee's application to use both estate funds and ERISA plan assets to pay expenses related to the administration of two (2) ERISA plans in accordance with Section 704(a)(11). 2013 WL 4674917, at *1. The bankruptcy court reviewed, *inter alia*, the October 2010 Decision and the Compensation Order, and concluded that "[a]bsent contrary guidance from a higher court, [it] is inclined to follow the line of cases favoring jurisdiction." *Id.* at *1-2. The bankruptcy court noted that "[t]he reasoning of those cases in finding that the trustee is acting under the authority of the Bankruptcy Code while carrying out his ERISA duties, and is therefore within the bankruptcy court's jurisdiction, is compelling." *Id.* at *2.

### 3. The October 2010 Decision and the Compensation Order

The Bankruptcy Court first addressed the Secretary's objection to the bankruptcy court's jurisdiction in the October 2010 Decision. The Bankruptcy Court held that it had core jurisdiction because "§ 704(a)(11), not ERISA, is the source of the Trustee's obligations" as RPC Plan Administrator, which "are an essential part of the total administration of the Debtors' cases." October 2010 Decision, at 22. The Bankruptcy Court found that "[t]o the extent that the Trustee's duties over the Plan arise out of ERISA, they do so only by operation of § 704(a)(11)." *Id.* (citing *NSCO*, 427 B.R. at 180). The Bankruptcy Court reasoned that "[w]hile the Trustee must now comply with the relevant ERISA statutes in carrying out this function, the Court still has jurisdiction over the Trustee's actions as Administrator," because "[t]o find otherwise would

effectively place the Trustee outside the reach of the Bankruptcy Court while the Trustee is carrying out a duty mandated by the Bankruptcy Code." *Id.* at 19-20.

The Bankruptcy Court noted that "[t]he fact that the source of the funds available for payment of any award under this section may come from the Plan, which is a non-estate asset, is not central to the determination of the Court's jurisdiction to award fees for these services." *Id.* at 25. The Bankruptcy Court continued:

> Whether the Trustee may use the Plan funds to pay this award will depend upon whether the services performed are compensable under the relevant ERISA statutes and the Plan documents. Any order awarding fees would contain no determination of whether Plan funds could be used to satisfy the award. However, any order would direct the Trustee to first seek to satisfy the award from Plan funds.

*Id.* at 26.

In the Compensation Order of August 20, 2012, the Bankruptcy Court justified the October 2010 Decision, stating that the bankruptcy court "has core jurisdiction to award fees to the Trustee and his duly retained professionals in connection with the Trustee's acts as Plan administrator," and "[w]hether the payments are made from the Plan assets or the Bankruptcy estate assets do not in any way alter the legal analysis supporting the Court's ruling, a ruling that is now the law of the case." Compensation Order, at 2-3. The Bankruptcy Court authorized the payment of the awards "using funds in the Pguy Account, and to the extent the funds in the Pguy Account are insufficient to pay these awards in full, the Applicants may use funds from the Debtors' estate for the remainder." *Id.* at 33.

#### 4. De Novo Review of the Bankruptcy Court's Jurisdiction

##### a. Core Jurisdiction

Clearly, the Bankruptcy Court has core jurisdiction over the Chapter 7 Trustee in performance of his obligations set forth in the Bankruptcy Code, as those duties are "matters

concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), and "would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 350-51 (2d Cir. 2010). However, as noted in *Mid-States Express*, "[t]he trustee does not carry around 'arising in' jurisdiction with him." 433 B.R. at 697 (citation omitted).

Although Section 704(a)(11) of the Bankruptcy Code directs the Chapter 7 Trustee to "continue to perform the obligations required of the administrator," 11 U.S.C. § 704(a)(11), it is ERISA and the RPC Plan Documents that establish and control the substantive rights and obligations of the RPC Plan Administrator. *See Mid-States Express*, 433 B.R. at 696 ("Section 704(a)(11) stands alone in putting the trustee in the shoes of the ERISA plan administrator. The plan administrator's rights and obligations are found in ERISA."). Section 704(a)(11) of the Bankruptcy Code does not modify the rights and obligations of an ERISA plan administrator, nor does it create additional obligations. *See id.* ("The Bankruptcy Code does not alter those right and obligations."). Kirschenbaum himself recognized this distinction, noting that, on the one hand, he must "perform[] his Chapter 7 trustee duties in accordance with the Bankruptcy Code, while at the same time performing his obligations as Plan administrator and complying with the relevant ERISA statutes and Plan documents." Trustee Br. [Docket Entry No. 7], at 9. Unlike Kirschenbaum's duties as Chapter 7 Trustee, his obligations as RPC Plan Administrator are created by ERISA and exist outside of the bankruptcy. *See AB & C Group*, 411 B.R. at 292 ("The resolution of disputes over the payment of administrative costs from Plan assets under ERISA is typically an issue that arises outside bankruptcy."). Therefore, the Bankruptcy Court lacks core jurisdiction over Kirschenbaum's obligations as RPC Plan Administrator.

16

### b. Non-Core Jurisdiction

#### i. Use of RPC Plan Funds

Kirschenbaum correctly contends that "the Trustee did not require an order prior to paying himself and his professionals from the [RPC] Plan funds." Trustee Br., at 17. Pursuant to ERISA and the RPC Plan Documents, Kirschenbaum, as RPC Plan Administrator, has discretionary power and authority to administer the RPC Plan. *See* RPC Plan § 19.01 ("The Administrator has the full power and the full responsibility to administer the Plan in all of its details, subject, however, to the requirements of ERISA."); 29 U.S.C. § 1102(a)(1) (granting administrator, as "named fiduciary," the "authority to control and manage the operation and administration of the plan"). In addition to this general discretionary authority, the RPC Plan Documents and ERISA expressly authorize the RPC Plan Administrator to terminate the RPC Plan, hire professionals to assist with the administration of the RPC Plan, and to pay "reasonable compensation" to himself and the retained professionals with funds from the RPC Plan. *See* RPC Plan §§ 16.06, 19.05; 29 U.S.C. §§ 1105(c)(1), 1108(c)(2).

"In authorizing the Trustee to satisfy the awards of compensation from the Plan assets, the [Bankruptcy] Court was doing no more than authorizing the Trustee to do that which he was already authorized to do under both ERISA and the Plan documents." Trustee Br., at 19. Thus, Kirschenbaum's application to use assets of the RPC Plan to pay its administration expenses was superfluous and could have no conceivable effect on the bankruptcy estate or its allocation. *See Mid-States Express*, 433 B.R. at 700 (where "trustee is not requesting this court to authorize anything that he cannot already do," "trustee's requested order can have no effect on the amount of estate property or the allocation thereof because it does not change the trustee's abilities"). Accordingly, the Bankruptcy Court lacked non-core "related to" jurisdiction to order that the fees

and expenses of the RPC Plan Administrator and his professionals be paid using assets from the RPC Plan. *See AB & C Group*, 411 B.R. at 292 (no "related to" jurisdiction because "Plan administrator's discretion to charge the Plan with administrative expenses is governed by ERISA" and "all of the [requested] fees would be paid from the Plan, instead of the estate"); *Mid-States Express*, 433 B.R. at 700. This is in contrast to an authorization to utilize estate assets to satisfy fees and expenses related to the discharge of the Administrator's duties.

Kirschenbaum admits that he sought authorization from the Bankruptcy Court to pay himself and his professionals using RPC Plan funds for fees and expenses incurred during the administration of the RPC Plan in order to secure derived judicial immunity from potential liability. *See* Trustee Br., at 20-23. Under ERISA, the Plan Administrator may be held personally liable for "breaches [of] any of the responsibilities, obligations, or duties imposed upon fiduciaries." 29 U.S.C. § 1109(a). The Secretary has the right to bring a civil action against the Chapter 7 Trustee, as RPC Plan Administrator, for any breaches of his fiduciary duties, 29 U.S.C. § 1132(a)(2), including the obligation to pay "no more than reasonable compensation" for "legal, accounting, or other services necessary for the establishment or operation of the plan." 29 U.S.C. § 1108(b)(2); *see Negus-Sons*, 2013 WL 4674917, at *2 (noting Secretary may challenge reasonableness of fees paid by trustee and seek their disgorgement).

"The doctrine of derived judicial immunity provides a bankruptcy trustee with immunity in the exercise of his business judgment, where he acts in accordance with an order of the court, after candid disclosure and on notice to interested parties." October 2010 Decision, at 11 (citing *Bennett v. Williams*, 892 F.2d 822 (9th Cir. 1989)); *see also AB & C Group*, 411 B.R. at 295 ("Where a bankruptcy trustee acts pursuant to the explicit instructions of the bankruptcy court, he enjoys complete immunity from suit.") (internal quotation marks and citations omitted).

According to Kirschenbaum, "[b]ecause he is performing Trustee functions, and acts in accordance with orders of the Bankruptcy Court, the Trustee is entitled to receive the same immunity in connection with the performance of his Section 704(a)(11) duties that he would receive in connection with the performance of any of his other mandated trustee duties." Trustee Br., at 20-21.

However, "the limited purpose of providing the Trustee with a possible future defense of immunity does not provide a nexus sufficiently close to a bankruptcy proceeding upon which this court can find 'related to' jurisdiction." *AB & C Group*, 411 B.R. at 295; *see also Mid-States Express*, 433 B.R. at 700 n.17 ("This court does not see how a comfort order could ever, by definition, fit within 'related to' jurisdiction," given that "comfort orders merely identify and reiterate what has already occurred by operation of law." (internal quotation marks and citations omitted)). The Secretary and RPC Plan participants remain eligible to bring a civil action against the Chapter 7 Trustee for any breaches of his fiduciary duties as RPC Plan Administrator. 29 U.S.C. § 1132(a)(2).

### ii. Use of Bankruptcy Estate Funds

In the event there are insufficient funds available in an ERISA Plan to pay the expenses incurred in its administration, the Chapter 7 Trustee, as ERISA Plan Administrator pursuant to Section 704(a)(11), may look to the bankruptcy estate to satisfy the remaining expenses. However, unless the ERISA Plan expressly grants the Plan Administrator authority to use bankruptcy estate assets to pay administration expenses, the Chapter 7 Trustee, acting as Plan Administrator in accordance with Section 704(a)(11), must obtain authorization from the Bankruptcy Court to use funds from the bankruptcy estate. *See Negus-Sons*, 2013 WL 4674917, at *3 (overruling objection to use of bankruptcy estate funds to pay expenses related to ERISA

plans because "there is no question about the [bankruptcy] court's authority to award fees and expenses from the assets of the bankruptcy estate").[9] The outcome of a request to utilize bankruptcy estate funds to pay the administration expenses of an ERISA plan would undeniably affect the bankruptcy estate. *See Franchi*, 452 B.R at 360 ("the possibility for a pension plan's insufficiency of assets created the ever-present potential that a bankruptcy estate will be called upon to compensate a Chapter 7 trustee and his professionals for their plan administration services"). Accordingly, insofar as the Chapter 7 Trustee, acting as RPC Plan Administrator pursuant to Section 704(a)(11), requests that a specified dollar award be paid from the bankruptcy estate funds for expenses related to the administration of the RPC Plan, the Bankruptcy Court would have "related to" jurisdiction. However, no application has been made by Kirschenbaum to the Bankruptcy Court for a specified dollar amount to be awarded from the bankruptcy estate.

III. Conclusion

This Court concludes that the Bankruptcy Court lacked non-core "related to" jurisdiction to order that the fees and expenses of the RPC Plan Administrator and his professionals be paid using assets from the RPC Plan. The Bankruptcy Court does, however, have jurisdiction to grant or deny an application seeking an award for Plan administration expenses from the bankruptcy estate.

---

[9] Unlike the instant case, the plan documents in *Mid-States Express* expressly granted the administrator "the choice to have either the Plan or the estate pay the expenses associated with administering the Plan." 433 B.R. at 699. Under those circumstances, the administrator would not need approval from the bankruptcy court to use estate funds to pay ERISA plan expenses. Accordingly, the bankruptcy court would also lack "related to" jurisdiction to approve the use of estate funds for ERISA related expenses.

The Court has considered both parties' submissions in their entirety. For the foregoing reasons, the Compensation Order of the Bankruptcy Court is REVERSED.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: March 31, 2014
Central Islip, New York